NO. 12-03-00188-CR
NO. 12-03-00189-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


GARY DON LEWIS,                                          §     APPEAL FROM THE 7TH
APPELLANT

V.                                                                         §     JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §     SMITH COUNTY, TEXAS





MEMORANDUM OPINION
            Gary Don Lewis appeals his two convictions for aggravated sexual assault of a child. After
finding him guilty of both offenses, the jury found the enhancement paragraphs true and assessed 
a life sentence in each case. In four issues, Appellant contends the trial court erred in restricting his
voir dire questioning of veniremembers, denying his challenges for cause to twenty veniremembers,
allowing the testimony of the designated outcry witness, denying his motion for mistrial based on
introduction of the wrong outcry statement, giving the jury additional instructions after it indicated
it was deadlocked, and denying his motion for mistrial based on the jury’s inability to reach a verdict. 
We affirm.

Background
            In April of 2000, six-year-old T.C. and her two-year-old sister, M.R., lived in her mother’s
home along with her two brothers. Her mother, Elretia Slaughter, allowed her cousin, Moneika
Garrett, to stay with them. Moneika, who was 18 or 19 years old, was dating Appellant at the time. 
Appellant visited often and sometimes stayed overnight. After the two girls tested positive for
gonorrhea that same month, the children were removed from the home and began living with friends
or relatives.
            T.C. began living with her aunt and uncle, Keith and Ruby Slaughter, in June 2001. In
October of that year, T.C. told her Aunt Ruby that Appellant had assaulted her and her sister and
threatened them to keep them from telling anyone about the assault. Ruby took T.C. to talk to the
police. An investigation ensued and Appellant was indicted for the aggravated sexual assaults of
T.C. and M.R. The jury found him guilty and assessed a life sentence in each case. The trial court
granted the State’s motion to order the sentences to be served consecutively.

Voir Dire
            In his first and second issues, Appellant asserts that the trial court improperly restricted his
voir dire and he was, therefore, unable to make all reasonable inquiries regarding the
veniremembers’ ability to consider the full range of punishment. Further, he contends the trial court
erred in denying his challenges for cause against twenty veniremembers who indicated they could
not consider the minimum punishment of five years of imprisonment for a person found guilty of
aggravated sexual assault of a child.
The Record
            During voir dire of the venire panel, defense counsel asked the following question:
 
We’re not getting into the facts of the case at this point in time but knowing the nature of this offense,
without knowing the facts as they will be presented to you, knowing what the name of the offense is,
aggravated sexual assault of a child, how many of you, knowing that alone, if the State has proven their
case to you beyond a reasonable doubt, could not consider punishment at the minimum range, at the
minimum of the range, punishment of five years?
 
Forty-seven people raised their hands. At the State’s request, the judge then instructed the panel that
they were not being asked to commit to a term of punishment, explaining that the law requires them
to be able to say they would consider the full range of punishment based on the evidence. He then
asked who would still be unable to consider the full range of punishment. Fourteen veniremembers
raised their hands. 
            Defense counsel then asked how many, without knowing the facts of the cases, could not
consider the maximum punishment. Three people indicated they could not consider the maximum. 
Defense counsel then asked how many could not consider the minimum punishment. The State
objected to the form of the question and a bench conference ensued. The court allowed the question
and counsel repeated it to the venire. Thirty-seven people indicated they could not consider a five-year sentence. Counsel then asked, “Each of you is telling me that you cannot consider the full range
of punishment?” The State objected, arguing that, although the last question was a different
question, counsel’s first question was an improper commitment question. The court sustained the
objection. 
            Defense counsel then asked, of those people who just raised their hands, “who could not
consider the full range of punishment?” The State again objected that the question was based on the
initial improper commitment question. The court again sustained the objection, explaining that
counsel was tying his last question to the improper question that attempted to make the
veniremembers commit to saying they could or could not award a five-year sentence. Defense
counsel then asked his final question:
 
Forget about who’s already raised their cards. What I’m trying to find out is of all 68 of you, who here
would have a problem considering the full range of punishment. I’m not asking you, I’m not asking
you to commit to actually giving someone a particular number of years. I’m asking you, can you
consider giving someone who’s been convicted of aggravated sexual assault of a child as low as five
years and as high as 99 years or life? Can you consider that? The reason I’m confused is because a
number of you raised your cards when I said could you consider five years. So could you, who could
not consider the full range of punishment, five years up to 99 years or life? 
 
Fifteen veniremembers raised their hands. Later, the defense challenged twenty veniremembers for
cause based on their alleged inability to consider the full range of punishment. The trial court
overruled his challenges. 
Applicable Law 
            The trial court has broad discretion over the process of selecting a jury. Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002). We leave to the trial court’s discretion the propriety of a
particular question and the trial court’s discretion will not be disturbed absent an abuse of discretion. 
Id. A trial court’s discretion is abused only when a proper question about a proper area of inquiry
is prohibited. Id. A question is proper if it seeks to discover a juror’s views on an issue applicable
to the case. Id. An otherwise proper question is impermissible, however, if it attempts to commit
the juror to a particular verdict based on particular facts. Id.
            The question of whether a defendant’s challenges to veniremembers were wrongfully denied
by the trial court is subject to an abuse of discretion standard. Garcia v. State, 887 S.W.2d 846, 854
(Tex. Crim. App. 1994). We review the trial court’s rulings in light of the venireperson’s voir dire
as a whole. Id. If a venireperson states unequivocally that he cannot follow the law due to his
personal biases, the trial court abuses its discretion in failing to grant a challenge for cause on that
basis. Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim. App. 1996). However, when the
venireperson vacillates or equivocates on his ability to follow the law, the reviewing court must defer
to the trial court’s judgment. Id. 
            The defense may make a challenge for cause on the basis that a veniremember has a bias or
prejudice against the law applicable to the case, including the punishment. Tex. Code Crim. Proc.
Ann. art. 35.16(c)2 (Vernon Supp. 2004-2005). Bias against the law is refusal to consider or apply
the relevant law, including the full range of punishment. Sadler v. State, 977 S.W.2d 140, 142 (Tex.
Crim. App. 1998).
Discussion 
            When the court sustained the State’s objections, it disallowed improper questions that
attempted to ask the veniremembers to commit to saying they would or would not give a five-year
sentence. This was not a restriction on Appellant’s voir dire examination. The court had given the
proper instruction and Appellant was allowed to ask the proper question. The State’s objections
were correctly sustained. See Trevino v. State, 815 S.W.2d 592, 605 (Tex. Crim. App. 1991), rev’d
on other grounds, 503 U.S. 562, 112 S. Ct. 1547, 118 L. Ed. 2d 193 (1992) (Objection properly
sustained where counsel asked, without reference to circumstances, whether veniremembers could
not consider a five-year sentence.). Appellant has not shown he was unable to make all reasonable
inquiries regarding the veniremembers’ ability to consider the full range of punishment.
            Neither has Appellant shown the trial court erred by denying his challenges for cause against
twenty veniremembers he asserts could not consider the minimum punishment. Of those twenty,
only two veniremembers consistently said they could not consider the full range of punishment. The
parties agreed to challenge those two for cause. Thus, the trial court could not have abused its
discretion in denying challenges to those veniremembers. The remainder of the complained-of
veniremembers vacillated when repeatedly asked the question. Most answered twice that they could
not consider five years, but did not say they could not consider the full range of punishment. Two
of them answered only once that they could not consider five years and also did not say they could
not consider the full range of punishment. Therefore, we defer to the trial court’s judgment. Brown,
913 S.W.2d at 580. The trial court did not abuse its discretion in denying Appellant’s challenges for
cause based on the veniremembers’ alleged inability to consider the full range of punishment. We
overrule issues one and two.

Outcry Witness
            In his third issue, Appellant asserts that the trial court erred in allowing the State to present
Ruby Slaughter’s testimony as an outcry statement because she was not the appropriate outcry
witness. He argues that the summary of her statement, which was attached to the State’s notice of
its intention to use the statement, did not describe an offense, but contained merely a general allusion
to sexual abuse. It also indicated that T.C.’s mother, Elrieta Slaughter, was the appropriate outcry
witness. Further, he contends, the trial court abused its discretion in allowing Ruby Slaughter to
testify outside the scope of the statement contained in the State’s notice. Appellant urges that the
trial court erred in allowing the testimony and in denying his motion for mistrial, which was based
on the assertion that Ruby Slaughter was not the appropriate outcry witness.
Applicable Law
            Article 38.072 of the Texas Code of Criminal Procedure allows admission of certain hearsay
testimony in the prosecution of offenses committed against children twelve years of age or younger. 
See Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). This article, known as the outcry
statute, applies only to statements made (1) by the child against whom the offense was allegedly
committed and (2) to the first person, eighteen years of age or older, to whom the child made a
statement about the offense. Id. § 2(a). To be a proper outcry statement, the child’s statement to the
witness must describe the alleged offense in some discernible manner and must be more than a
general allusion to sexual abuse. Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The
trial court has broad discretion in determining the proper outcry witness, and its determination will
not be disturbed absent an abuse of discretion. Id. at 92. Likewise, a trial court’s denial of a motion
for mistrial is reviewed under an abuse of discretion standard. See Kipp v. State, 876 S.W.2d 330,
339 (Tex. Crim. App. 1994).
            The outcry statute requires the party intending to offer the outcry statement to notify the
adverse party of its intention to do so, providing it with the name of the witness and a written
summary of the statement. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(1). The purpose of the
statute is to prevent any surprise from the introduction of the outcry testimony. Gottlich v. State, 822
S.W.2d 734, 737 (Tex. App.–Fort Worth 1992, pet. ref’d). The statute requires that the defendant
receive adequate notice of the content and scope of the outcry testimony. Id.
Discussion
            The State filed its notice of intention to offer Ruby Slaughter’s testimony describing T.C.’s
statement about the offense. Attached to the notice is the complete, handwritten statement made to
police by Ruby on November 13, 2001. Ruby described T.C.’s emotional behavior since she began
living with her aunt and uncle in June of 2001. On October 25, 2001, T.C. told Ruby that one night
her mother left her, M.R., and their two brothers home with Moneika, who later left to go to work,
leaving them in the care of Appellant. Appellant made the boys go in one room and he went with
the girls into a different room. T.C. explained to Ruby that Appellant “got on top of her and it
hurted [sic] and she was bleeding and that she told her mother [Elerita Slaughter] and she didn’t say
anything. She also said that he messed with her sister.” T.C. told her that she and M.R. had the
same disease that Moneika and Appellant had. Ruby asked T.C. if she knew who did this to her and
T.C. said “Gary Don.”
            Generally, in her statement, as outlined in Ruby’s statement, T.C. relayed that Appellant got
on top of her and did something to her that caused pain and bleeding. Both Ruby and T.C. provided
more details in their trial testimony. Ruby testified that, on October 25, 2001, T.C., while crying and
screaming, described what Appellant did to her. Ruby further testified that T.C. told her that he took
off her clothes and that it hurt when he put his private inside her private. T.C. said she was bleeding
and the bed was wet. T.C. also told Ruby that she watched while Appellant did the same thing to
her two-year-old sister. Additionally, T.C. told Ruby where the incident happened, that it happened
at night, the names of at least some of the people who were in the house at the time, and the name
of the man who attacked her. Ruby’s testimony meets the requirement that the child’s statement
describe the offense in a discernible way. See Garcia, 792 S.W.2d at 91.
            Ruby also testified that T.C. told her “she had tried to tell her mother, and nobody listened
or paid her any attention.” On cross-examination, she clarified, stating that T.C. tried to tell her
mother that Appellant raped her but T.C. did not believe her mother heard her because, at the time,
her mother was “kind of out of it.” T.C. testified at the trial that, the next morning, she tried to tell
her mother what happened but her mother did not listen. She explained that she did not tell her
mother that Appellant had put his private in her. She told her mother that Appellant had touched her
in a bad way.
            The record shows that T.C. described the offense to Ruby, not to her mother. Accordingly,
the trial court did not abuse its discretion in allowing Ruby to testify as the outcry witness. See id;
Sims v. State, 12 S.W.3d 499, 500 (Tex. App.-Dallas 1999, pet. ref’d) (Child’s statement to her
mother that appellant touched her private parts held to be a general allusion that something in the
area of sexual abuse was occurring.).
            Neither do we find fault in the trial court’s admission of testimony “that went beyond the
scope of the ‘outcry’ statement” included with the State’s notice. The statute requires the State to
provide Appellant with a summary of the statement that will be testified to at trial. Tex. Code Crim.
Proc. Ann. art. 38.072, § 2(b)(1). The statute does not require a transcript disclosing every detail
the witness will explain from the witness stand. The notice provided by the State made Appellant
aware that Ruby Slaughter would testify that T.C. told her she and her younger sister were sexually
assaulted by Appellant. Further, Appellant had access to the State’s file, including the indictments
alleging contact and penetration of the female sex organ by Appellant’s fingers or sex organ. The
statement also included a reference to the fact that T.C., who was hurt and bleeding as a result of
Appellant’s actions, contracted the same disease as Appellant and his girlfriend. Based on these
facts, the trial court did not abuse its discretion in concluding that Appellant was not surprised by
the outcry testimony. See Gottlich, 822 S.W.2d at 737.
            Specifically, Appellant objected at the point Ruby stated that T.C. told her Appellant took
her clothes off, because that information was not included in her written statement. Appellant
obtained a running objection to any testimony not contained in the written statement. This would
include Ruby’s testimony that T.C. said Appellant put his private inside her private, afterwards the
bed was wet, and that her screams went unheard because of the loud music in the house. When T.C.
took the stand, she testified to all of these details. Had there been any error in allowing Ruby to
testify to these details, T.C.’s testimony would have rendered it harmless. See id. We conclude the
trial court did not abuse its discretion in determining that Ruby was the proper outcry witness, that
she did not improperly testify outside the scope of her written statement, or that Appellant’s motion
for mistrial should be denied. We overrule Appellant’s third issue.

Allen Charge
            In his fourth issue, Appellant asserts the trial court’s instructions to the jury, given in
response to a note indicating the jury was deadlocked, were coercive and prevented him from getting
a fair trial. He further asserts the trial court erred in denying his motion for mistrial, which he urged
just before the trial court’s final instruction to the jury and which was based on information from the
jury that it was “hopelessly deadlocked” with eleven jurors voting for a guilty verdict. We disagree.
            The record indicates that the jury began deliberations at 1:20 p.m. It sent a note to the trial
court at 2:44 asking for guidance because the jury was split eleven-to-one and could not reach a
decision and asking to review T.C.’s testimony. The trial court responded with an explanation of
the applicable rules regarding a request for testimony or additional evidence. The jury sent another
note to the trial court at 3:56 stating that there was still an eleven-to-one split, they were “fully
locked up,” and asking if they were required to acquit if they could not reach a unanimous decision. 
At 4:05, the trial court sent additional instructions to the jury, explaining that if it is unable to arrive
at a unanimous verdict, the court would declare a mistrial, discharge this jury, and, as the indictment
would still be pending, it is likely that the case would be tried again before another jury. The court
instructed the jury “to continue deliberations in an effort to arrive at a verdict that is acceptable to
all members of the jury if you can do so without doing violence to your conscience.” 
            About half an hour later, the jury sent another note to the trial court claiming it was
“hopelessly deadlocked” with little possibility that anyone will change his mind. The trial court then
brought the jury back into the courtroom and read what is generally known as an Allen


 charge,
admonishing the jurors not to do injustice to their own personal opinions, but at the same time, to
listen and consider the opinions of their fellow jurors. It also explained that the law provides that
the jury shall be kept together for such a time as to render it altogether improbable that it can agree. 
Finally, as in the previous instruction, the court admonished the jury “to continue deliberations in
an effort to arrive at a verdict that is acceptable to all members of a jury, if you can do so without
doing violence to your conscience. Do not do violence to your conscience, but continue
deliberating.” The jury returned a unanimous verdict about two and a half hours later. 
            An Allen charge is usually given in response to a specific request by the jury for additional
guidance when the jury is deadlocked. West v. State, 121 S.W.3d 95, 107 (Tex. App.-Fort Worth
2003, pet. ref’d). This instruction will constitute reversible error only if, on its face, it is so improper
as to render jury misconduct likely or jury misconduct is demonstrated to have occurred in fact. 
Calicult v. State, 503 S.W.2d 574, 576 n.2 (Tex. Crim. App. 1974); West, 121 S.W.3d at 107. To
prevail on a complaint that an Allen charge is coercive, an accused must show that jury coercion or
misconduct likely occurred or occurred in fact. West, 121 S.W.3d at 107. An Allen charge is unduly
coercive and therefore improper only if it pressures jurors into reaching a particular verdict or
improperly conveys the court’s opinion of the case. Arrevalo v. State, 489 S.W.2d 569, 571 (Tex.
Crim. App. 1973).
            The instructions contained in the trial court’s Allen charge are consistent with instructions
used in Allen charges that have been reviewed and held to be noncoercive. See Howard v. State, 941
S.W.2d 102, 123 (Tex. Crim. App. 1996); West, 121 S.W.3d at 109; Willis v. State, 761 S.W.2d 434,
437-38 (Tex. App.-Houston [14th Dist.] 1988, pet. ref’d). We see no language in the instruction that
shows jury coercion likely occurred. An instruction which suggests that all jurors reevaluate their
opinions in the face of disparate viewpoints cannot be said to be coercive on its face. Howard, 941
S.W.2d at 123. The instruction does not tell the jury that one side or the other possesses superior
judgment, nor does it tell them to distrust their judgment. Additionally, the trial court concluded the
instructions by admonishing the jurors not to do violence to their conscience. There is nothing in
the instructions conveying the court’s opinion of the case or commenting on the weight of the
evidence. Appellant has not shown that jury coercion or misconduct likely occurred or occurred in
fact. See Calicult, 503 S.W.2d at 576 n.2. The trial court did not err in giving the Allen charge or
in denying Appellant’s motion for mistrial. We overrule Appellant’s fourth issue.




Conclusion
            The trial court did not improperly restrict Appellant’s voir dire questioning of
veniremembers. Nor did it err in denying Appellant’s challenges for cause, determining that Ruby
Slaughter was the proper outcry witness, allowing her testimony, giving an Allen charge to the
deadlocked jury, or denying Appellant’s motions for mistrial.
            We affirm the trial court’s judgments.

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered April 29, 2005.
Panel consisted of Worthen, C.J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.











(DO NOT PUBLISH)